Brian Joseph WALKER,

v.

WEST CALN TOWNSHIP, *et. al.*

Civ. A. No. 00–CV–5433.

United States District Court,
E.D. Pennsylvania.

Oct. 16, 2001.

Richard G. Freeman, Philadelphia, PA, for plaintiff.

Andrew J. Bellwoar, Christopher P. Gerber, Siana, Bellwoar & McAndrew, LLP, Exton, PA, for defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

This civil rights action has been brought before the Court upon motion of all of the defendants, Eric D. Ruggeri, West Caln Township, John Doe, and West Brandywine Township for summary judgment. For the reasons which follow, the motion shall be granted.

### Factual Background

This lawsuit arose at approximately 1:15 a.m. on October 27, 1998 when Officer Eric Ruggeri of the West Caln Township Police Department received a call through the 911 emergency dispatcher that there was a possible domestic dispute in the 100 block of Sugarmans Road in West Caln Township, Chester County, Pennsylvania. At that time, Officer Ruggeri was the only officer on duty and as he approached 115 Sugarmans Road he saw several articles of what appeared to be clothing in the roadway in front of that address. Officer Ruggeri's patrol car was then approached by a woman who identified herself as Sharon Glenn and who said that she had just been involved in an argument with her ex-boyfriend, Plaintiff Bryan Walker, that Mr. Walker had assaulted her, injured her right arm and that she was in a lot of pain. Officer Ruggeri noted that her hand was bent back from her right forearm and was obviously disfigured. Ms. Glenn also told the defendant officer that Mr. Walker was still inside the house, that he was intoxicated and that as she was fleeing, she heard him ransacking the home and breaking glass. Finally, Ms. Glenn informed the officer that Mr. Walker had firearms in the house and that due to a previous incident which he had had with the Pennsylvania State Police, it was not likely that Mr. Walker would be cooperative with him.

As Ms. Glenn had a friend with her at that time, Officer Ruggeri told her to go to the hospital and he would interview her there later. He then radioed for assistance and two officers from nearby Parkesburg Borough and West Brandywine Township arrived some fifteen minutes later. At defendant Ruggeri's direction, the West Brandywine police officer took up a position to the rear of Plaintiff's house and he and the Parkesburg officer went to the front and knocked on the door. From his vantage point at the front door, Officer Ruggeri could see the plaintiff in his kitchen drinking from a cup. In response to the knock, Mr. Walker came to the front door but refused to open it. Officer Ruggeri told Plaintiff that Sharon Glenn had told him that she had a broken arm, that he wished to talk to him about what happened. The defendant then asked Mr. Walker to either come outside to talk or allow him to come into the house. Plaintiff told Defendant that Ms. Glenn's arm was already broken, that she was a drug addict who should be taken away and that he didn't

feel comfortable either opening the door or letting the police in because he didn't want to go to jail. Officer Ruggeri told Mr. Walker that something had to happen—either he was going to have to come out or the police would have to come in. Some fifteen minutes later, Officer Ruggeri began to pound on the door and then told the plaintiff that he was going to come in. Approximately 6–7 minutes later, Officer Ruggeri broke in the front door to Plaintiff's residence, seized and handcuffed the plaintiff and took him into custody.

Mr. Walker was subsequently charged with simple and aggravated assault, harassment and stalking, disorderly conduct and resisting arrest. Although he was bound over for trial on all charges following his preliminary hearing, he was eventually acquitted of everything following a jury trial on July 14, 1999. He brought this lawsuit on October 26, 2000 pursuant to 42 U.S.C. § 1983 alleging that by arresting and prosecuting him for the events of October 27, 1998, the defendants violated his constitutional rights under the Fourth, Fifth and Fourteenth Amendments and under the state law theories of false arrest, malicious prosecution and assault and battery.

### Summary Judgment Standards

It is recognized that the underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Under Fed.R.Civ.P. 56(c), summary judgment is properly rendered:

"... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Stated more succinctly, summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–32, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Troy Chemical Corp. v. Teamsters Union Local No. 408,* 37 F.3d 123, 125–126 (3d Cir.1994); *Oritani Savings & Loan Association v. Fidelity & Deposit Company of Maryland,* 989 F.2d 635, 638 (3d Cir.1993); *Arnold Pontiac–GMC, Inc. v. General Motors Corp.,* 700 F.Supp. 838, 840 (W.D.Pa.1988). An issue of material fact is said to be genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In *Celotex Corp. v. Catrett, supra,* the Supreme Court articulated the allocation of burdens between a moving and nonmoving party in a motion for summary judgment. Specifically the Court in that case held that the movant had the initial burden of showing the court the absence of a genuine issue of material fact, but that this did not require the movant to support the motion with affidavits or other materials that negated the opponent's claim. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The

Court also held that Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). Thus, Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the required showing that a genuine issue of material fact exists. *Id.* *See Also, Morgan v. Havir Manufacturing Co.,* 887 F.Supp. 759 (E.D.Pa.1994); *McGrath v. City of Philadelphia,* 864 F.Supp. 466, 472–473 (E.D.Pa.1994).

### Discussion

By their motion, Defendants move for the entry of summary judgment in their favor on all of the claims raised in the plaintiff's complaint. In his response thereto, Plaintiff does not dispute that judgment as a matter of law is properly entered in favor of the John Doe defendant or as to his claims for municipal liability, false arrest and malicious prosecution. Indeed, according to the plaintiff's response to defendants' summary judgment motion, "... discovery has narrowed the issues [in this case] to two: 1) whether defendant Eric D. Ruggeri had probable cause to arrest the plaintiff without a warrant, and 2) whether defendant Eric D. Ruggeri used excessive force under the circumstances of this case in arresting (him)." Consequently, we hereby summarily grant the defendant's motion and enter summary judgment as to John Doe, West Caln Township and West Brandywine Township and as to Plaintiff's claims for false arrest and malicious prosecution against the remaining defendant, Eric Ruggeri. We therefore now turn to Plaintiff's claims that Officer Ruggeri arrested him without probable cause and with excessive force.

■ In order to bring a successful § 1983 [1] claim, a plaintiff must demonstrate (1) that the challenged conduct was committed by a person acting under color of state law, and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or federal law. *Olender v. Township of Bensalem,* 32 F.Supp.2d 775, 782 (E.D.Pa. 1999), *aff'd* 202 F.3d 254 (3d Cir.1999); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255–56 (3d Cir.1994); *Carter v. City of Philadelphia,* 989 F.2d 117, 119 (3d Cir. 1993).

■ The Fourth Amendment prohibits arrests without probable cause.[2] *See, Orsatti v. New Jersey State Police,* 71 F.3d 480, 482 (3d Cir.1995). Specifically, that Amendment provides that:

"The right of the people to be secure in their persons, houses, papers and effects

---

1. Under 42 U.S.C. § 1983,
   Every person who, under color of any statute, ordinance, regulation, custom or usage of any state, territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

2. Although not all actions by police officers are governed by the Fourth Amendment, the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than a due process analysis. *Berg v. County of Allegheny,* 219 F.3d 261, 269 (3d Cir.2000). Accordingly, to the extent that Plaintiff's complaint asserts claims under the due process clauses of the Fifth and Fourteenth Amendments, judgment as a matter of law is entered at this time as to those claims as well.

against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause, supported by oath and affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Probable cause to arrest is said to exist where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable, prudent person in believing that an offense has been or is being committed by the person to be arrested. *Gerstein v. Pugh*, 420 U.S. 103, 111–112, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Merkle v. Upper Dublin School District*, 211 F.3d 782, 788 (3d Cir.2000). Although the question of probable cause in a § 1983 damage suit is generally one for the jury, a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly. *Merkle, supra*, citing, *inter alia, Montgomery v. DeSimone*, 159 F.3d 120, 124 (3d Cir.1998), *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir.1997) and *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 190–192 (3d Cir.1984). The question is for the jury only if there is sufficient evidence whereby a jury could reasonably find that the police officers did not have probable cause to arrest. *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997), citing *Deary*, 746 F.2d at 192.

Under Pennsylvania law, a police officer is authorized to arrest a person without a warrant if the police officer has probable cause to believe that the person has committed simple assault against a family or household member, even if the officer did not witness the assault, provided that he or she first observed recent physical injury to the victim or other corroborative evidence. 18 Pa.C.S. § 2711.[3] In Pennsylvania, simple assault is committed when a person "... attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another ..." 18 Pa.C.S. § 2701(a). "Bodily injury" is an "impairment of physical condition or substantial pain." 18 Pa.C.S. § 2301.

■ In this case, the uncontradicted evidence of record reflects that Officer Ruggeri was specifically called to the plaintiff's residence to investigate a possible domestic dispute. Upon his arrival there, the officer first observed what appeared to be various articles of clothing strewn about in the street in front of Plaintiff's driveway and it was at that point that his patrol car

**3.** Specifically, that Statute states, in relevant part:

(a) General rule.—A police officer shall have the same right of arrest without a warrant as in a felony whenever he has probable cause to believe the defendant has violated section 2504 (relating to involuntary manslaughter), 2701 (relating to simple assault), 2702(a)(3), (4) and (5) (relating to aggravated assault), 2705 (relating to recklessly endangering another person), 2706 (relating to terroristic threats), or 2709(b) (relating to harassment and stalking) against a family or household member although the offense did not take place in the presence of the police officer. A police officer may not arrest a person pursuant to

this section without first observing recent physical injury to the victim or other corroborative evidence. For the purposes of this subsection, the term "family or household member" has the meaning given that term in 23 Pa.C.S. § 6102 (relating to definitions).

Under 23 Pa.C.S. § 6102, "family or household members" are

Spouses or persons who have been spouses, persons living as spouses or who lived as spouses, parents and children, other persons related by consanguinity or affinity, current or former sexual or intimate partners or persons who share biological parenthood.

was approached by a woman who identified herself as plaintiff's ex-girlfriend, Sharon Glenn. After learning from Ms. Glenn that the plaintiff had broken her arm and seeing evidence of the injury, Officer Ruggeri called for back-up assistance from two neighboring municipalities and eventually succeeded in arresting Mr. Walker without a warrant. Given the provisions of § 2711 of the Pennsylvania Crimes Code and the now well-established rule that a police officer has probable cause to arrest when he has received a reliable identification by a victim of his or her attacker, we find that Officer Ruggeri had ample probable cause to arrest Mr. Walker on October 27, 1998. *Sharrar v. Felsing, supra; Cronin v. West Whiteland Township,* 994 F.Supp. 595 (E.D.Pa.1998). Summary judgment is therefore granted as to Plaintiff's claim that he was arrested without probable cause and in violation of the Fourth Amendment.

Plaintiff also argues that Officer Ruggeri violated his Fourth Amendment rights by arresting him within the confines of his home. The law is clear that a person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement. *See: California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). A seizure occurs even when an unintended person is the object of detention, so long as the means of detention are intentionally applied to that person. *Berg, supra,* citing *Brower v. County of Inyo,* 489 U.S. 593, 596, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989); *Medeiros v. O'Connell,* 150 F.3d 164, 169 (2d Cir.1998); *Rucker v. Harford County,* 946 F.2d 278, 281 (4th Cir.1991), cert. denied, 502 U.S. 1097, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992) and *Landol–Rivera v. Cruz Cosme,* 906 F.2d 791, 796 (1st Cir.1990).

While law enforcement authorities do not need a warrant to arrest an individual in a public place as long as they have probable cause to believe that person has committed a felony or where a misdemeanor is committed in the officer's presence, the Fourth Amendment as applied to the states through the Fourteenth Amendment prohibits the police from making a warrantless and nonconsensual entry into a suspect's home to make a routine felony arrest in the absence of exigent circumstances. *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *U.S. v. McGlory,* 968 F.2d 309, 342 (3d Cir.1992). Thus, before agents may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. *Welsh,* 466 U.S. at 750, 104 S.Ct. at 2098, citing *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). Exigent circumstances may exist and a warrantless intrusion may be justified by hot pursuit of a fleeing felon, or imminent destruction of evidence, or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling. *Minnesota v. Olson,* 495 U.S. 91, 100, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85 (1990). In assessing the risk of danger, the gravity of the crime and likelihood that the suspect is armed should be considered. *Id.; Sharrar,* 128 F.3d at 820.

In applying these principles to the record here, we find that sufficient exigent circumstances were present to justify Defendant's warrantless, nonconsensual entry into the plaintiff's home to effectuate his arrest. Indeed, the evidence shows that the alleged crime was one of apparent violence (assault) in that the victim told Officer Ruggeri that the plaintiff had bro-

ken her arm and the officer himself observed her deformed right arm and wrist which appeared to corroborate her statement. In addition, Ms. Glenn also informed the defendant that Mr. Walker was intoxicated, was in the process of ransacking the house as she was leaving, and that he had firearms and was unlikely to be cooperative given that he had recently had some type of altercation with the Pennsylvania State Police. When Officer Ruggeri attempted to speak with Mr. Walker, the plaintiff proved himself to be uncooperative, refusing to either allow the officer entry to the residence or to go outside to speak with him, despite the officer's numerous requests to do so. It should further be noted that the incident occurred at 1:15 a.m., an hour when the district justices' offices are closed and thus making it inherently difficult to promptly procure the issuance of an arrest warrant. We therefore find that the officers had reason to fear that Mr. Walker could have posed a danger to them and/or to himself and that their actions in entering his home to arrest him without his consent was justified. Summary judgment is therefore properly entered in favor of the defendant on this claim as well.

■■■■■ Mr. Walker also claims that the force used to arrest him was excessive under the circumstances and was therefore also in violation of his civil and constitutional rights. We disagree. In order to prevail on a Fourth Amendment excessive force claim, a plaintiff must demonstrate that the defendant's use of force was not "objectively reasonable." *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Mellott v. Heemer,* 161 F.3d 117, 122 (3d Cir.1998). Proper application of this standard requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Mellott, supra.,* quoting *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. It is also important to consider how many individuals the officer confronted and whether the physical force applied was of such an extent as to lead to injury. *Sharrar,* 128 F.3d at 822. Finally, the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the $^{20}/_{20}$ vision of hindsight. *Mellott,* 161 F.3d at 122 citing *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*

In this case, although he does not specify the nature of the allegedly excessive force in either his complaint or his Brief in Opposition to the Defendants' Motion for Summary Judgment, according to Plaintiff's deposition testimony, when Defendant and the Parkesburg police officer broke down the front door to Plaintiff's residence, he was standing about six feet away. Defendant yelled at Plaintiff to "get down." Plaintiff, however, just stood still and the officers then grabbed him by the arms and pushed him face down to the floor, which was padded and carpeted. The officers then straightened out his arms, handcuffed him behind the back, escorted him to a patrol car and drove him to the West Caln Township police building. As a result of this, Plaintiff claims injuries to his neck and back.

In reviewing these actions in light of the "reasonableness" factors outlined above, we first find that although here there were

three officers who were faced with apprehending only one individual, that individual was suspected of breaking his former girlfriend's arm during a domestic dispute. The officers further had reason to believe that Mr. Walker may have posed a threat to their and/or his own safety given the report that he was intoxicated, had been heard breaking glass and otherwise damaging property inside his home and that he had firearms. Moreover, Mr. Walker had not only been reported by Ms. Glenn to be uncooperative but also had proved himself to be unwilling to cooperate with the police when he steadfastly refused to come outside to talk and when he disobeyed the officers' orders to "get down." In light of these circumstances, we find the defendant's actions in seizing Plaintiff's person to have been objectively reasonable. Accordingly, we shall enter judgment in favor of Defendant as a matter of law on Plaintiff's claim for excessive force as well.

It is for all of the reasons enumerated above that the defendants' motion for summary judgment shall be granted in its entirety pursuant to the attached order.

### ORDER

AND NOW, this 16th day of October, 2001, upon consideration of Defendants' Motion for Summary Judgment and Plaintiff's response thereto, it is hereby ORDERED that the Motion is GRANTED and Judgment is hereby entered in favor of all of the defendants as a matter of law.